In the Matter of JOSEPH HENIG, an Attorney, Respondent, EDWARD MARGOLIN, Petitioner.

Second Department, July 20, 1970.

*Edward Margolin* (*James J. Fitzpatrick* of counsel), petitioner in person.

*Bracken & Sutter* (*John J. Sutter* and *James H. Moffatt* of counsel), for respondent.

*Per Curiam.* The petitioner has moved to confirm in part and to disaffirm in part the report of the Justice designated to hear the charges of professional misconduct against the respondent. The respondent cross-moves to confirm the report with respect to the charges which were found therein not to have been proven and otherwise to disaffirm it.

Nine specifications of professional misconduct relating to negligence cases which the respondent accepted on a contingent fee basis from July 1, 1960 through June 30, 1965 are set forth in subparagraphs A through I of paragraph 5 of the petition, the consideration of which required 18 days of hearing before Justice HARNETT, four volumes of stenographic transcript (totaling 1996 pages), scores of witnesses and hundreds of exhibits, and resulted in a comprehensive 83-page report.

The somewhat lengthy specifications which the Justice found sustained include two relating to the respondent's failure, during the period in question, to file with the Judicial Conference approximately 200 statements of retainer, as well as a number of closing statements in connection with settled claims, and to furnish a copy of any closing statement to the particular client concerned in such matters (Specifications A and B). In his answer, by failure to deny, the respondent admitted these specifications and, at the hearing, did not seek to refute them.

Specification C charged that respondent filed 30 retainer statements which "incorrectly and falsely stated the true name and relationship of the person referring the client" and that he "neglected fully to state the occupation of the" referrers. On the basis of testimony of clients and alleged referrers, the falsity of 23 of such retainer statements was established and Justice HARNETT found the specification sustained to the extent indicated.

Concerning specification D, which charged that in 13 instances the respondent filed incorrect and incomplete closing statements in that (1) he failed to pay clients the full amounts stated to have been paid them and (2) he failed to itemize and list liens, claims and expenses charged against the clients, Justice HARNETT found subdivision 1 thereof proved as to four of the clients; and, on the basis of the respondent's admission with respect to the seven named clients in subdivision 2 thereof, concerning whom the respondent at the hearing offered no testimony or rebuttal, he found that subdivision proved.

At the hearing, the petitioner conceded that subdivision 1 of specification E, relating to the respondent's failure to preserve records for a period of at least five years after settlement or satisfaction of claims, was not proven. However, subdivision 2 thereof, which charged that the respondent kept incomplete, incorrect and false records in connection with certain of the negligence cases involved, was overwhelmingly established by the evidence adduced by the petitioner.

Specification F charged that the respondent solicited retainers from 20 named clients and that he "stirred up litigation by seeking out those with claims for personal injuries in order to

secure them as clients, through automobile repairmen, tow car operators and others, and by accepting referrals from such sources," four of whom are specifically named. Justice HARNETT found the charge proved in only eight of the listed cases. As to the instances the Justice found not sustained, we agree that, even though some of the circumstances were suspicious, and the respondent's conduct " highly aggressive, to say the least ", the petitioner's proof did not establish that the respondent solicited or stirred up the particular litigation by any improper inducement, reference, origination or corrupt arrangement. However, as to the instances the Justice found sustained, it appears to have been the respondent's practice, on the day after an accident, to come to the ultimate client's home *uninvited* and *unknown* to the client. To the extent indicated, the specification was clearly proven.

Specification G, which charged that the respondent had settled the claims of six infants without court approval, was found proven by the Justice.

Specification H was to the effect that, with intent to conceal his true connection with 15 clients, the respondent arranged with another attorney to refer the claimants to the latter, with the understanding that retainers would be filed in the latter's name without reference to the respondent and that the true source of the referral would be falsely stated. The attorneys' fees were to be shared on an agreed basis. The charge was found sustained as to nine of the clients.

Finally, specification I charged that (1) in each of two separate accident cases in which he had been retained, the respondent, with intent to deceive, caused to be mailed to the prospective defendant, for transmittal to the insurance carrier, a claim letter on the letterhead of still another attorney, with the same address and telephone number as that of the respondent, purporting to bear the other attorney's signature, and falsely stating that he had been retained to prosecute the claim; and (2) ultimately, in each case, the settlement check, payable to such other attorney and the client jointly, was received and indorsed with the other attorney's name, and then indorsed and cashed by the respondent and the proceeds disbursed. On the basis of the other attorney's testimony and that of the respondent, which was in sharp conflict, Justice HARNETT found the charge sustained. We agree with his observation that, even assuming the respondent had authority to sign the other attorney's name, the respondent, and not the other attorney, had been retained and was handling the case, and the other attorney's " defaults in maintaining professional standards cannot in any way elevate Respondent's posi-

tion.'' Nor may excuse be found for the respondent's desire to conceal the conflict in interest arising from the fact that he also represented the passengers in the clients' cars.

In our opinion, all of the charges, except those which were found by Justice HARNETT not to have been sustained, were fully supported by the proofs; and, accordingly, the report should in all respects be confirmed.

In determining the measure of discipline to be imposed upon the respondent, we have taken into consideration, as an extenuating circumstance, the fact that during the period of time in question, his wife was suffering from a variety of serious physical ailments, as a result of which he incurred considerable debts and was burdened with the care of his young children. We have also taken into consideration that no allegation has been made that the respondent was otherwise neglectful of his professional duties and that he co-operated with the judicial inquiry.

With these mitigating factors in mind and without condoning, as we cannot, the respondent's proven misconduct, it is our opinion that suspension from the practice of law for a period of five years would be an appropriate and suitable discipline to be imposed.

Accordingly, the petitioner's motion and the respondent's cross motion insofar as they are to confirm the report in different parts should be granted and otherwise denied; the report is confirmed in all respects; and the respondent should be suspended from the practice of law for a period of five years, commencing August 15, 1970.

CHRIST, P. J., RABIN, HOPKINS, MUNDER and MARTUSCELLO, JJ., concur.

Petitioner's motion and respondent's cross motion insofar as they are to confirm the report in different parts are granted and otherwise denied; and report confirmed in all respects. Respondent is suspended from the practice of law for a period of five years commencing August 15, 1970.